## IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | |
|---|---|
| JON LUER, and | ) |
| | ) |
| ANDREA STEINEBACH, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )  Case No.:  4:17-cv-767 NAB |
| | ) |
| ST. LOUIS COUNTY, MISSOURI, | ) |
| | ) |
| MICHAEL CLINTON, and | ) |
| | ) |
| BENJAMIN SELZ, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT BY DEFENDANTS ST. LOUIS COUNTY, OFFICER MICHAEL CLINTON, AND OFFICER BENJAMIN SELZ**

Come now Defendants St. Louis County, Missouri, Officer Michael Clinton, and Officer Benjamin Selz (collectively, "Defendants"), and submit the following as their Memorandum of Law in Support of their Joint Fed.R.Civ.P. 56 Motion for Summary Judgment.

**Introduction**

In their complaint, Plaintiffs allege Officer Michael Clinton and Officer Benjamin Selz unreasonably searched their property and residence, and that said officers pointed a weapon at Plaintiff Luer without justification, all in violation of the Fourth Amendment and Article I, §15 of the Missouri Constitution.  *Complaint, Counts I and II*.  Plaintiffs also allege that Defendant St. Louis County failed to train and supervise Officers Clinton and Selz on the requirements of the Fourth Amendment, and that the officers' warrantless

1

search and alleged unreasonable seizure were conducted pursuant to the policy or custom of St. Louis County.  *Complaint, Count III.*

In the early morning hours of July 10, 2016, at approximately 3 a.m., an unidentified man rode in a taxi from downtown St. Louis to St. Louis County.  SOF 5.  The unidentified man told the taxi driver to drop him off near a house so that he could get money to pay the fare.  SOF 6.  The unidentified man exited the cab and went between two houses.  SOF 8.  The taxi driver called the St. Louis County Police to locate his customer, the suspect, an unidentified man.  SOF 9.  Two St. Louis County Police Officers, Defendants Clinton and Selz, arrived on the scene in full police uniforms, armed with pistols.  SOF 10.  Officer Clinton believed that due to a crime being committed, suspects will flee the scene and may hide in residents' backyards, sides of houses, under vehicles, or continue running through multiple yards to evade apprehension by law enforcement.  SOF 11.  Officer Clinton did a protective sweep looking for the suspect at the outdoor premises of the homes near which the taxi driver had stopped.  SOF 12 and 14.  A protective sweep is a search of an area where a suspect could possibly be hiding and either wishing to cause harm to officers or to another victim, and is done to ensure that other crimes are not being committed.  SOF 13. While returning from the protective sweep, Officer Clinton observed an unlocked pedestrian garage door.  SOF 15.  This was the Luer's residence, 1012 Van Loon.  Although the officers assert that the pedestrian doors leading into the Luer residence from the garage were ajar, the parties agree that all the pedestrian doors leading into the Luer residence from the garage were not locked.  SOF 16.  It is not common in the area of the Luer residence for residents to leave their doors unlocked and burglaries are often discovered after residents wake up in

2

the morning. SOF 17. After encountering the unlocked doors, the Officers went to the front of the Luer residence and made an extensive effort to make contact with the occupants by knocking on the doors and windows of the residence, to no avail. SOF 18-19. Plaintiff Luer admitted the interior door to the garage could have been left unlocked and even left completely open. SOF 20. Plaintiff Steinebach admitted she did not check the outside door of the garage before retiring for the evening. SOF 21. Under the circumstances, where a crime has been committed, a suspect fled in the area of the unlocked doors, in an area where residents normally lock their doors, the officers were concerned the suspect was seeking refuge in the residence. This would constitute a burglary, a felony. The officers entered the residence for a protective sweep of persons. It was necessary to enter the Luer residence because of the circumstances where a crime had just been committed at night and the suspect had fled toward the residence, residence doors were unlocked, and no one had answered after the officers knocked multiple times on the doors and windows of the residence, which is unusual. *(Exhibit M, Clinton Depo. 63:25 – 64:17).* Prior to entering the residence, Officer Clinton advised the dispatcher to hold the station, which frees the radio for emergencies during the search. SOF 22-23. While searching the Luer residence, Officer Clinton announced "St. Louis County Police" and asked for persons to identify themselves. SOF 46. The officers encountered Plaintiff Luer on the main floor with their handguns drawn from their holsters. SOF 24-25. After a brief 15 second encounter, the officers determined Mr. Luer was not armed, and Mr. Luer definitely identified the defendants as uniformed police officers. SOF 26-29. The officers asked Mr. Luer to make certain that everyone in the home was safe, and Mr. Luer asked Ms. Steinebach and his step-son, Luca, to come out of their bedrooms.

3

The officers briefly explained the exigent circumstances and the reason for entering the home due to the unlocked doors and the stealing suspect in the area. The officers and the Luer's went out onto the front porch where the cab driver pointed to Luca as the suspect. However, Luca was not intoxicated and did not have a white hat as the cab driver had described the suspect. Luca was also younger than what the cab driver had described. Mr. Luer consented to Officer Clinton looking in Luca's room for a white hat, and none was found. SOF 30. Luca also consented to a brief sobriety test. SOF 31. The officers told the cab driver that Luca was not the suspect. To be safe and certain that no person was hiding in the Luer residence, Officer Clinton offered to go through the residence with Mr. Luer, and Mr. Luer consented. SOF 32. Mr. Luer even agreed to unlock a locked room in the basement, just in case he had left the room unlocked by mistake and an intruder was actually inside. *Exhibit N, Luer Depo. 53:25 – 54:19*. The room contained 150 guns, as Mr. Luer is a gun dealer. *Exhibit N, Luer Depo. 20-21*. After their initial contact, Mr. Luer consented to Officer Clinton looking through the house for any person hiding in the residence. (*Exhibit N, Luer Depo. 52:1 – 55:3*). The cab driver left the area, and the officers left after Mr. Luer shook Officer Clinton's hand and thanked him. *(Exhibit M, Clinton Depo. 88).* The only report of the incident was the Computer Aided Dispatch report. *Exhibit X*. Defendants incorporate by reference, as if fully set forth herein, its Statement of Facts and all exhibits.

## Summary Judgment Standard

The Court may grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the

moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).  The substantive law determines which facts are critical and which are irrelevant. Only disputes over facts that might affect the outcome will properly preclude summary judgment.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  A moving party bears the burden of establishing a right to the motion. *Celotex,* 477 U.S. at 323. Once the moving party discharges the burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, and not the "mere existence of some alleged factual dispute." Fed.R.Civ.P. 56(e); *Anderson,* 477 U.S. at 247. The nonmoving party may not rest upon mere allegations or denials of pleadings. *Anderson,* 477 U.S. at 256.

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving parties, and all justifiable inferences are to be drawn in their favor. *Anderson,* 477 U.S. at 255. The Court's function is not to weigh the evidence, but to determine whether there is a genuine issue for trial.  *Id.* at 249.

**Defendants Clinton and Selz are entitled to Summary Judgment on Count I**

Plaintiffs bring Count I against Defendant Police Officers Michael Clinton and Benjamin Selz, alleging that the search for persons on their property and in their home without a warrant and the pointing of their weapons at Plaintiff Luer was a violation of their Fourth Amendment right against unreasonable search and seizure.  Defendants are entitled to summary judgment on Count I on the basis of qualified immunity.

Qualified immunity protects the defendant officers from liability unless their "conduct violates a clearly established constitutional or statutory right of which a

5

reasonable person would have known." *Shekleton v. Eichenberger*, 677 F.3d 361, 365 (8th Cir. 2012)(citing *Brown v. City of Golden Valley,* 574 F.3d 491, 495 (8th Cir.2009)). Analysis of the Defendants' qualified immunity defense requires the Court to conduct an inquiry with two steps, one step being to determine whether the actions of the Defendant police officers violated a constitutional or statutory right, and the other being to determine whether on the date of the subject incident, July 10, 2016, the law was clearly established that the actions of the Defendants violated the constitution. *Shekleton v. Eichenberger*, 677 F.3d 361, 366 (8th Cir. 2012)(*citing Brown* at 496).  Courts may conduct the inquiries in any order, and need not reach the second inquiry if the first is decided in favor of the Defendants.  *Pearson v. Callahan*, 555 U.S. 223 (2009).  The Court should be mindful of the Supreme Court's pronouncement that "[q]ualified immunity gives government officials room to make reasonable but mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the law." *Messerschmidt v. Millender*, 132 S.Ct. 1235, 1244 (2012)(citations omitted).  Further, "[o]fficials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Luckert v. Dodge County*, 684 F.3d 808, 817 (8th Cir. 2012)(citation omitted).

      To evaluate the constitutionality of a particular action, courts consider whether the action was objectively reasonable. *Carpenter v. Gage*, 686 F.3d 644 (8th Cir. 2012). Absent consent, an officer's entry into a home generally requires a warrant. *See Payton v. New York,* 445 U.S. 573, 589–90 (1980).  An "exigent circumstances" exception to the warrant requirement, however, permits a warrantless entry when the needs of law enforcement are so compelling that a warrantless search is objectively reasonable. *Mincey*

6

*v. Arizona,* 437 U.S. 385, 393–94 (1978). Such exigencies include the need to render emergency aid to an injured occupant, hot or fresh pursuit of a fleeing suspect, and the need to prevent the destruction of evidence. *Kentucky v. King,* 563 U.S. 452 (2011). The Supreme Court has held that officers may make a warrantless entry onto private property to fight a fire and investigate its cause, *Michigan v. Tyler,* 436 U.S. 499, 509 (1978), to prevent the imminent destruction of evidence, *Ker v. California,* 374 U.S. 23, 40 (1963)(plurality opinion), or to engage in "'hot pursuit'" of a fleeing suspect, *United States v. Santana,* 427 U.S. 38, 42 (1976). Thus, a warrantless entry is lawful if officers reasonably believed that exigent circumstances existed. *Anderson v. Creighton,* 483 U.S. 635, 641 (1987); *Carpenter v. Gage*, 686 F.3d 644, 648 (8th Cir. 2012). Further, "the question is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them." *Graham v. Connor,* 490 U.S. 386, 397 (1989). "[O]ur prior cases make clear" that "the subjective motivations of the individual officers ... ha[ve] no bearing on whether a particular seizure is 'unreasonable' under the Fourth Amendment." *Id*. at 405. The ultimate touchstone of the Fourth Amendment is "reasonableness," thus the warrant requirement is subject to certain exceptions. *Flippo v. West Virginia,* 528 U.S. 11, 13, (1999) *(per curiam); Katz v. United States,* 389 U.S. 347, 357 (1967). Another exigency obviating the requirement of a warrant is the need to assist persons who are seriously injured or threatened with such injury. "'The need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency.'" *Mincey v. Arizona,* 437 U.S. 385, 392 (1978)(*quoting Wayne v. United States,* 318 F.2d 205, 212 (C.A.D.C.1963) (Burger, J.)); *see, also, Michigan v. Tyler,* 436 U.S. 499, 509 (1978). Accordingly, law enforcement

officers may enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury. *Mincey, supra,* at 392; *see, also*, *Georgia v. Randolph,* 547 U.S. 103, 118 (2006)("[I]t would be silly to suggest that the police would commit a tort by entering ... to determine whether violence (or threat of violence) has just occurred or is about to (or soon will) occur"). *Brigham City, Utah v. Stuart*, 547 U.S. 398 (2006).

In the present case, it is silly to suggest that the Officers violated the constitution by entering the Luer yard or residence. Consider the circumstances objectively: Officer Clinton first conducted a protective sweep for officer and citizen safety reasons. A protective sweep is a search of an area where a suspect could possibly be hiding and either wishing to cause harm to officers or to another victim, and is done to ensure that other crimes are not being committed. SOF 13. Then, consider a jailable offense of stealing had been committed, the thief had fled the scene, unlocked doors of a residence were located where the thief had fled, in an area where people generally lock their doors, and no occupant responded to the Officers' knocking on the doors and windows of the residence. *See*, St. Louis County Ordinances 3729 and 18886, §716.140 and §716.180, which provide a penalty of up to one year imprisonment for stealing. It is objectively reasonable that the suspect sought refuge in the residence, and due to the suspect's entry into the residence, a burglary, or felony offense, was now occurring. It is also objectively reasonable that the occupants were in danger. *Brigham; and Mincey, supra.* Importantly, an action is "reasonable" under the Fourth Amendment, regardless of the individual officer's state of mind, "as long as the circumstances, viewed objectively, justify [the] action." *Scott v. United States,* 436 U.S. 128, 138 (1978) (emphasis added). The officer's

8

subjective motivation is irrelevant. *See Bond v. United States,* 529 U.S. 334, 338, n. 2 (2000) ("The parties properly agree that the subjective intent of the law enforcement officer is irrelevant in determining whether that officer's actions violate the Fourth Amendment ...; the issue is not his state of mind, but the objective effect of his actions"); *Whren v. United States,* 517 U.S. 806, 813 (1996) ("[W]e have been unwilling to entertain Fourth Amendment challenges based on the actual motivations of individual officers"); *Graham v. Connor,* 490 U.S. 386, 397 (1989) ("[O]ur prior cases make clear" that "the subjective motivations of the individual officers ... ha[ve] no bearing on whether a particular seizure is 'unreasonable' under the Fourth Amendment." *Id*. at 405.

In *Brigham City, Utah v. Stuart*, 547 U.S. 398 (2006), officers responded to a 3 a.m. call for a loud party. After walking down the driveway, the officers observed an altercation in the kitchen of the residence. *Id*. The officers entered and made arrests. *Id.* "Because the officers' subjective motivation is irrelevant, *Bond v. United States,* 529 U.S. 334, 338, n. 2, it does not matter here whether they entered the kitchen to arrest respondents and gather evidence or to assist the injured and prevent further violence. *Id*. at 398-399 (*citing Bond v. United States,* 529 U.S. 334, 338, n. 2 (2000); *Indianapolis v. Edmond,* 531 U.S. 32, 46 (2000); and *Florida v. Wells,* 495 U.S. 1, 4 (2000) (*distinguished*)). "Relying on this Court's holding in *Welsh v. Wisconsin,* 466 U.S. 740, 753, that "an important factor to be considered when determining whether any exigency exists is the gravity of the underlying offense for which the arrest is being made," respondents further contend that their conduct was not serious enough to justify the officers' intrusion into the home. This contention is misplaced. In *Welsh,* the "only potential emergency" confronting the officers was the need to preserve evidence of the

9

suspect's blood-alcohol level, an exigency the Court held insufficient under the circumstances to justify a warrantless entry into the suspect's home. *Id.*  Here, the officers were confronted with *ongoing* violence occurring *within* the home, a situation *Welsh* did not address." *Brigham City, Utah v. Stuart*, 547 U.S. 398, 398–99 (2006).  In the present case, it does not matter the subjective motives of the officers, but that the objective circumstances indicated entry was proper to arrest a suspected felon, to prevent injury or violence, and to assist anyone injured. *Id.*

Because there is no constitutional violation, it is not necessary to reach step two of the qualified immunity analysis.  *Pearson v. Callahan*, 555 U.S. 223 (2009).  Nonetheless, the law on July 10, 2016 was not clearly established that the actions of the Defendants violated the constitution.  To the contrary, the established law was that the Defendant Officers' actions were constitutional.  For example, a number of reported cases have determined that similar exigent circumstances were constitutional and not in violation of the Fourth Amendment. *Stanton v. Sims*, 571 U.S. 3 (2013)(hot pursuit of misdemeanor suspect onto curtilage, officers had qualified immunity); *Carroll v. Carman,* 135 S. Ct. 348 (2014)(Police officers entitled to qualified immunity entering onto yard and porch for report of a car thief at residence); *Illinois v. McArthur*, 531 U.S. 326 (2001)(holding that police officer's refusal to allow defendant to enter residence without a police officer until a search warrant was obtained was a "reasonable seizure" that did not violate the Fourth Amendment).  In *McArthur*, the Supreme Court clarified its holding in *Welsh v. Wisconsin*, 466 U.S. 742 (1984), wherein it held a warrantless search was unconstitutional, because the *Welsh* offense was "nonjailable," whereas the *McArthur* offense was "jailable." *Id*. at 335-36.  In other words, if objectively

reasonable, a warrantless entry is not unconstitutional if the offense is jailable. In *Warden v US,* 387 U.S. 294 (1967) the Supreme Court ruled no improper seizure occurred after police entered a residence searching for an armed robbery suspect whom they were told entered the residence less than five minutes before the police arrived. The officers never saw the man enter the house. The police "acted reasonably when they entered the house and began to search for a man of the description they had been given and for weapons which he had used in the robbery or might use against them. The Fourth Amendment does not require police officers to delay in the course of an investigation if to do so would gravely endanger their lives or the lives of others. Speed here was essential, and only a thorough search of the house for persons and weapons could have insured that [the suspect] was the only man present and that the police had control of all weapons which could be used against them or to effect an escape." *Id*. at 298-99. There was no "bright line" that had been transgressed by Officers Clinton and Selz by entering the Luer yard and residence. *Luckert v. Dodge County*, 684 F.3d 808, 817 (8th Cir. 2012)(citation omitted). Existing precedent did not place the constitutional question "beyond debate." Officers Clinton and Selz are entitled to qualified immunity because it was not established law on July 10, 2016 that a police officer may not enter a yard for a protective sweep or an unlocked residence pursuant to a fresh pursuit where he objectively believes a suspect is attempting to evade arrest for a crime, thus committing a felony burglary, and that the occupants of the residence may be in peril.

      Defendants Clinton and Selz are also entitled to summary judgment on the basis of qualified immunity regarding that portion of Count I that alleges a Fourth Amendment unreasonable seizure violation for pointing their weapons at Plaintiff Luer.

11

As described, *supra*, in the first step of qualified immunity analysis, the court considers whether the actions of the officers were objectively reasonable. In the second step, the court determines whether on the date of the subject incident, July 10, 2016, the law was clearly established that the actions of the Defendants violated the constitution. *Shekleton v. Eichenberger*, 677 F.3d 361, 366 (8th Cir. 2012) (*citing Brown* at 496).

The Eighth Circuit has held that when an officer simply draws his gun and points it at a subject, without any indication that the officer intends to fire the gun, "does not rise to the level of a constitutional violation." *Edwards v. Giles*, 51 F.3d 155, 157 (8th Cir. 1995)(granting qualified immunity; *citing Collins v. Nagle,* 892 F.2d 489, 497 (6th Cir.1989); *Hinojosa v. City of Terrell,* 834 F.2d 1223, 1231 n. 10 (5th Cir.1988). *See, also*, *See California v. Hodari D.,* 499 U.S. 621, 626 (1991) (seizure by police requires either physical force or submission to assertion of authority); *Cole,* 993 F.2d at 1328, 1332-33 (8th Cir. 1993)(granting qualified immunity and finding seizure is necessary part of excessive force claim in case involving pursuit, roadblocks, and shots fired). In the present case, for officer safety and the safety of others, while making a search of a residence for a suspected felon, it is clearly acceptable to unholster a handgun and hold it in such a fashion that makes it readily available. *Lt. Hampton Affidavit, Exhibit V*. 'Low-ready' is the holding of a gun at a 45 degree angle to the ground, and 'ready' is the pointing straight ahead of the gun. *Id*. While Mr. Luer alleges the officers pointed their guns at him, or the 'ready' position, the officers assert their guns were in a 'low-ready' position. Whether the gun position was 'ready' or 'low-ready' does not matter for purposes of this analysis. Clearly, the parties agree the officers' weapons were not holstered when Mr. Luer first encountered the officers. SOF 25. There are no facts

12

which indicate that the officers intended to fire their guns. *Edwards v. Giles*, 51 F.3d 155, 157 (8th Cir. 1995). In fact, the guns were holstered within 15 seconds of the encounter with Mr. Luer, after the officers determined Mr. Luer was unarmed. SOF 27-28. Due to the officers' safety awhile searching a residence for a suspected felon, it was objectively reasonable to unholster their guns in either the 'low-ready' or 'ready' position. *Edwards v. Giles*, 51 F.3d 155 (8th Cir. 1995); *Carpenter v. Gage*, 686 F.3d 644 (8th Cir. 2012); *Graham v. Connor,* 490 U.S. 386, 396 (1989).

The evaluation of a police officer's use of force is made "from the perspective of a reasonable officer at the scene, rather than with the 20/20 vision of hindsight," and allows "for the fact that police officers are often forced to make split-second decisions – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Graham v. Connor*, 490 U.S. 386, 396 (1989).

Because qualified immunity is an immunity from suit rather than a mere defense to liability, it is effectively lost if a case is erroneously permitted to go to trial. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009), (*quoting Mitchell v. Forsyth*, 472 U. S. 511, 526 (1985). The actions of the officers were objectively reasonable. Furthermore, as of the date of the incident, July 10, 2016, there was no "bright line" that had been transgressed by Officers Clinton and Selz by unholstering their weapons in the Luer residence. *Luckert v. Dodge County*, 684 F.3d 808, 817 (8th Cir. 2012)(citation omitted).

### Defendants Clinton and Selz are entitled to Summary Judgment on Count II

Plaintiffs bring Count II against Defendant Police Officers Michael Clinton and Benjamin Selz, alleging that the search for persons of their home without a warrant and

13

the pointing of their weapons at Plaintiff Luer was a violation of their rights under the Missouri Constitution, Article 1, §15. Defendants are entitled to summary judgment on Count II on the basis of official immunity.

Under Missouri law, absent bad faith or malice, which requires proof of intent to injure, public officials are entitled to official immunity from suit for discretionary acts or omissions undertaken within the scope of their authority, but can be held liable "for torts committed when acting in a ministerial capacity." *State ex rel. Twiehaus v. Adolf*, 706 S.W.2d 443, 444, 446-47 (Mo. banc 1986) (quotation omitted); *see, also, Rustici v. Weidemeyer*, 673 S.W. 2d 762, 767 (Mo. banc. 1984); *Harris v.Munoz*, 43 S. W. 3d 284, 387 (Mo. App. W. D. 2001); *Bryan v. Missouri State Highway Patrol*, 963 S. W. 2d 403, 406 (Mo. App. 1998). Official immunity "exists because 'fear of personal liability should not hang over public officials as they make judgments affecting the public safety and welfare.'" *Bachman v. Welby*, 860 S.W.2d 31, 33 (Mo.App.E.D. 1993).

In the present case, no bad faith or malice exists. The officers entered the Luer residence in search of a suspected felon, a suspected thief attempting to evade capture by entering a residence and thus committing a felony. The officers' search and their unholstering of their guns were all discretionary acts. SOF 47.

With regard to punitive damages, the defendant's conduct must be motivated by evil motive or intent or involve a reckless or callous indifference to the federally protected rights of others. *Hollins v. Powell*, 773 F. 2d 191, 197 (8th Cir. 1985). In this case, there is no evidence of such conduct, and the Defendants clearly have no hint of evil motive or intent or reckless indifference.

## Defendant County is entitled to Summary Judgment on Count III – Municipal Liability

Plaintiffs bring Count III against Defendant St. Louis County, alleging municipal liability for failure to "train and supervise Defendants Clinton and Selz on the requirements of the Fourth Amendment." *Complaint, paragraph 63*. Specifically, Plaintiffs allege three failures on the part of Defendant St. Louis County, all resulting in unreasonable seizures and a failure to train or supervise:  (1) failure to require a written explanation when officers conduct a warrantless search demonstrates its authorization of the officers' violation of the Fourth Amendment; (2) failure to require a written report or explanation when officers draw their weapons and point them at a private citizen; and (3) Defendant Clinton and Defendant Selz conducted a warrantless search and unreasonable seizure were conducted pursuant to policy or custom of Defendant St. Louis County. *Complaint, paragraphs 64-66*. Plaintiffs allege they have sustained damages "as a direct and proximate result of Defendant St. Louis County's customs, policies, and failure to train or supervise." *Complaint, paragraph 67*. The policies and extensive training of the County relating to searches and seizures prove that the County is not deliberately indifferent, and is thus not liable. Furthermore, there is no custom, policy or practice which permits unconstitutional warrantless searches.

Plaintiffs may establish liability under §1983 against the County by proving that their constitutional rights were violated by misconduct so pervasive among non-policymaking employees "as to constitute a custom or usage with the force of law." *Ware v. Jackson County, Mo.,* 150 F.3d 873, 880 (8th Cir.1998) (*quoting Monell v. Dep't of Soc. Serv.,* 436 U.S. 658, 691 (1978)). "To establish . . .  liability based on its failure to

prevent misconduct by employees, the plaintiff must show that [governmental] officials had knowledge of prior incidents of police misconduct and deliberately failed to take remedial action." *Parrish v. Luckie,* 963 F.2d 201, 204 (8th Cir.1992).  Plaintiffs must show (1) "a continuing, widespread, persistent pattern of unconstitutional misconduct" by the County employees, (2) to which policymaking officials were deliberately indifferent or which policymaking officials tacitly authorized after notice to the officials of that misconduct, and (3) that custom of deliberate indifference or tacit authorization was a "moving force behind the constitutional violation." *Thelma D. v. Bd. Of Educ.,* 934 F.2d 929, 932–33 (8th Cir. 1991)(*quoting Jane Doe "A",* 901 F.2d at 646). A governmental entity will be liable "only where [its] inaction reflects a deliberate indifference to the constitutional rights of the citizenry, such that inadequate training or supervision actually represents the city's 'policy.'" *Szabla v. City of Brooklyn Park, Minn.,* 486 F.3d 385, 392 (8th Cir.2007).  St. Louis County cannot be held liable under a theory of *respondeat superior*.  *Monell v. Department of Soc. Servs.*, 436 U. S. 658, 691 (1978); *Szabla v. City of Brooklyn Park, Minn*, 486 F. 3d 385, 389 (8th Cir. 2007).

Plaintiffs cannot produce evidence of governmental liability.  The affidavits of Chief Belmar and Lieutenant Hampton, Director of the Police Academy, describe the training and supervision of the St. Louis County Police Officers as well as Officers Clinton and Selz.  *Exhibits T and V; SOF 33, 34, 35, 36, 37, 39, 40, 41 and 42.*  Chief Belmar avers that he had no notice of or reason to suspect that any St. Louis County Police Officer was inadequately trained.  Nor was he aware of a pattern of unconstitutional behavior on behalf of Officer Clinton or Officer Selz to alert him that

increased discipline, supervision or corrective action was indicated. Officers Clinton and Selz never received a complaint or discipline. *Affidavit of Captain Lawson, Exhibit Y.* Chief Belmar also states that he was assured that the training and supervision within the St. Louis County Police Department prior to the date of the incident, July 10, 2016, were exemplary, as evidenced by the CALEA certifications with excellence. Accreditation is prima facie evidence that standards and practices of an agency meet constitutional due process requirements. *Woe by Woe v. Cuomo,* 729 F.2d 96, 106 (2nd Cir. 1984). The Affidavits of Chief Belmar, Captain Lawson, and Lieutenant Hampton therefore, establish that St. Louis County did not violate any constitutional rights because there was no notice of deficiencies in training or supervision, nor was Defendant County deliberately indifferent with respect to the training and supervision of Officer Clinton and Officer Selz. The affidavits of Chief Belmar, Captain Lawson, and Lieutenant Hampton are evidence of the absence of any County liability, and none of the three key elements for liability exist. *Exhibits T, V, Y.* County police officers and recruits are extensively trained, properly supervised, and when necessary, disciplined. Defendants further submit that Plaintiffs are unable to produce sufficient evidence to overcome the instant Motion.

      In order to prove a failure-to-train claim, a plaintiff must (1) establish that policymakers acted with deliberate indifference in failing to train employees; (2) identify a specific deficiency in the training program; and (3) establish that the deficiency is so "closely related to the ultimate injury" that it "actually caused the constitutional depravation." *City of Canton v. Harris,* 489 U.S. 378, 391 (1989). Inferences of inadequate training and causation must be based on more than the mere fact that the alleged constitutional violation occurred in the first place. *Id.* at 392.

Plaintiffs have not alleged a specific deficiency in St. Louis County's training. Chief Belmar and Lieutenant Hampton set forth the training provided to St. Louis County officers. *Exhibits T and V.* St. Louis County training is CALEA certified, which fact alone should be sufficient to require plaintiffs to produce evidence to overcome the instant motion. SOF 38, 43, 44 and 45. Mere allegations that the County failed to adequately train the named police officers cannot defeat summary judgment. *Baum v. Helget Gas Prods., Inc.,* 440 F.3d 1019, 1022 (8th Cir.2006).

A municipality may be liable for unconstitutional acts when those acts implement or execute an unconstitutional policy or custom. *Mettler v. Whitledge*, 165 F. 3rd 1197, 1204 (8th Cir. 1999). To establish a constitutional violation arising from a custom, a plaintiff must show that the injury was "caused by municipal employees engaging in a widespread and persistent pattern of unconstitutional misconduct that municipal policymakers were either deliberately indifferent to or tacitly authorized." *Russell v. Hennepin County*, 420 F. 3rd 841, 849 (8th Cir. 2005), *citing Larson v. Miller*, 76 F. 3rd 1446, 1453 (8th Cir. 1996). In this instance, plaintiff must show that there was a widespread and persistent failure to follow policy, that a policymaker was aware of this failure and was either deliberately indifferent to or tacitly approved of the conduct, and that the unconstitutional act was caused by the custom of failing to follow the policy. *Id*. Also see *Ware v. Jackson County, Mo,*150 F. 3d 873, 880 (8th Cir. 1998), that misconduct must be so pervasive as to constitute a custom or usage with the force of law. In the present case, no such facts exist.

Moreover, an unconstitutional act on the part of a county employee is a prerequisite to imposing liability. *Reasonover v. St. Louis County, Mo.,* 447 F.3d 569,

18

583 (8th Cir.2006); *Avalos v. City of Glenwood,* 382 F.3d 792, 802 (8th Cir. 2004).  As the Defendant Officers submit that none of them violated a constitutional right, Defendant County in turn is entitled to summary judgment for this additional reason.

## **Conclusion**

Defendant Officer Michael Clinton and Defendant Officer Benjamin Selz did not violate Plaintiffs' constitutional rights and are entitled to summary judgment.  In addition under Federal Law they are entitled to summary judgment on the basis of Qualified Immunity, and under state law on the basis of Official Immunity.

Since there were no underlying violations, Defendant St. Louis County, Missouri is entitled to summary judgment.  In addition, under Federal law Defendant County is not liable under the doctrine of *respondeat superior*, and there is no basis to support that the policies, practices and customs of St. Louis County caused a constitutional violation under Federal Law.  Further, being CALEA certified is prima facie evidence that standards and practices of an agency meet constitutional due process requirements.  There is no evidence of deliberate indifference.  Under Missouri Law, St. Louis County has sovereign immunity.  Finally there is no evil motive or intent or callous indifference of the individual defendants and the claims of punitive damages should be dismissed on summary judgment.

Respectfully submitted,

PETER J. KRANE,
COUNTY COUNSELOR

*/s/Carl W. Becker*

Carl W. Becker #37585 MO
Associate County Counselor
41 S. Central Avenue, 9th Floor
Clayton, MO 63105
314.615.7042; 314.615.7029 (direct dial)
314.615.3732 (fax)
cbecker@stlouisco.com
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing was served via the Court's electronic filing system to all counsel of record on June 8, 2018:

American Civil Liberties Union
of Missouri Foundation:
Anthony E. Rothert, #44827
Jessie Steffan, #64816
Omri E. Praiss, #41850
906 Olive Street, Suite 1130
St. Louis, Missouri 63101
Phone: 314/652-3114 \ Fax: 314/652-3112
arothert@aclu-mo.org; jsteffan@aclu-mo.org; Jessie.steffan@gmail.com
opraiss@aclu-mo.org

American Civil Liberties Union
of Missouri Foundation:
Gillian R. Wilcox, #61278
406 West 34th Street, Suite 420
Kansas City, Missouri 64111
gwilcox@aclu-mo.org
*Attorneys for Plaintiffs Jon Luer and Andrea Steinebach*

*/s/Carl W. Becker*
Carl W. Becker